# United States District Court
## Northern District of Alabama
### Southern Division

Deborah Bertholot,        ]
                      ]

    Plaintiff(s),     ]
                      ]

    vs.            ]     CV-98-N-2601-S
                      ]

Bessemer Board of Education,  ]
                      ]

    Defendant(s).    ]

**ENTERED**

OCT 2 6 2000

## Memorandum of Opinion

## I.    Introduction

In this action for so called "reverse discrimination," plaintiff Deborah Bertholot ("Ms. Bertholot") brings suit against her former employer, The Bessemer Board of Education ("Board") pursuant to 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII") because the Board declined to renew her employment as an English teacher in the Bessemer School System, allegedly because she is a white person. The court presently has for consideration the Board's motion for partial summary judgment [Doc. No. 15], filed May 30, 2000. The motion has been fully briefed; the parties were afforded an opportunity for oral argument, though they did not take advantage of that opportunity; and, it is ripe for decision. Upon due consideration, the motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.



## II.   Statement of Facts[1]

Viewed in a light most favorable to the plaintiff, the evidence of record suggests that, except where noted, these facts are undisputed: Ms. Bertholot, a white female, graduated from the University of Montevallo in August of 1994 with a Bachelor's degree in English and a Master's degree in Education.  Soon thereafter, in July of 1994, she was employed by the Board to teach ninth and tenth grade English classes at Jess Lanier High School ("Jess Lanier"), a school that is a part of the Bessemer system. According to Ms. Bertholot, during her third year of employment, her direct supervisor, Principal Don Walker, told her on three separate occasions that her employment contract would not be renewed because "he did not want white teachers in his school system" and that "black students need black teachers."[2]  (Pl. Ex. A, p. 011).  Immediately following one of those alleged conversations, Ms. Bertholot related Principal Walker's comments to a fellow teacher, Jo E. Alexander, who testified that an agitated and upset Bertholot "had told her that she was going to be fired basically because she was a white person, and he [Principal Walker] didn't think that white people were able to teach black children as well." (Pl. Ex. G, 131-132).

In April or May of 1997, allegedly due to poor classroom management skills, difficulty disciplining students, and an instance where she sat dazed in the hallway "Indian style," Principle Walker recommended to the Deputy Superintendent Rubeye Long who, in turn,

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record.  These are the "facts" for purposes of this opinion only.  They may not be the actual facts.  *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

[2] Although not directly stated in either party's factual allegations, the parties apparently agree that a majority of students who attend Jess Lanier are African-American.

forwarded the recommendation to Superintendent Earnest K. Nicholson, that Ms. Bertholot's employment contract not be renewed. (Def. Ex. 4, p. 69, 79). Deputy Superintendent Long neither endorsed nor opposed Principal Walker's recommendation, merely passing it on to her superior. (Def. Ex. 4, p. 31; Ex. 6, p. 55). Soon thereafter, apparently acting based entirely on Principal Walker's recommendation, Superintendent Nicholson recommended that the Board not renew Ms. Bertholot's contract. (Pl. Ex. J, p. 157-160, 187-188; Def. Ex. 8). On May 20, 1997, the Board accepted Superintendent Nicholson's recommendation and declined to renew the plaintiff's contract for the 1997-1998 school year. (Def. Ex. 8). Carolyn Hull, a recently retired principal in the Bessemer system testified that, during a discussion about how school instruction could be improved, Superintendent Nicholson commented that "Black teachers teach black children more effectively." (Pl. Ex. H, p. 142). This comment was purportedly made during the same time period that Superintendent Nicholson recommended that Ms. Bertholot's employment contract not be renewed. At all relevant times, Superintendent Nicholson knew that Ms. Bertholot is white. (Pl. Ex. J, p. 161, 171-174).

Less than one month after the decision to not renew Ms. Bertholot's contract, the Board hired Barbara Morrow, an African-American teacher, to fill the vacancy in the English department created by the non-renewal of Ms. Bertholot's contract. As was the case with the decision that Ms. Bertholot would not be offered a new contract, the Board's decision to offer a contract to Ms. Morrow was based upon the recommendation of Superintendent Nicholson who, in turn, had received a recommendation from Principle Walker. (Pl. Ex. J, p. 218-219; Ex. N, p. 222). When they made their respective recommendations, both

3

Principle Walker and Superintendent Nicholson knew that Ms. Morrow is an African-American. (Pl. Ex. J, p. 161, 171-174; Ex. N, p. 222).   Morrow was not certified to teach at the high school level in the State of Alabama either at the time she applied for employment with the Board or at the time she was hired (Pl. Ex. J, p. 182; Ex. N, p. 220).  She was given an emergency certification to teach at that level October 21, 1997, conditioned upon the completion of nine (9) semester hours of college credits and three (3) semester hours of Continuing Education Units by June 30, 1998.  (Pl. Ex. N, p. 228).  Ms. Morrow completed those requirements and was regularly certified to teach at the high school level on May 21, 1998. (Pl. Ex. N, p. 230).

In or around December of 1997, Ms. Bertholot filed a complaint with the EEOC and received a right to sue letter on September 16, 1998.  She commenced the present action on October 14, 1998, asserting claims based upon theories of disparate treatment, disparate impact, and retaliation. Since Ms. Bertholot has consented to judgment in favor of the Board with respect to her unlawful retaliation claim, and the Board has failed to challenge her disparate impact claim, the only issue before the court is whether Ms. Bertholot raises a genuine issue of material fact with respect to her disparate treatment claim.[3] Ms. Bertholot argues that the Board declined to renew her contract because she is white and a less qualified Black person was hired to replace her based upon the belief of Principle Walker

---

[3]The court notes that the plaintiff has not identified any policy, practice, or custom of the Board which she claims has impacted her or any member of a protected class. In the absence of any aid from the plaintiff the court assumes she isn't serious about this claim and will henceforth disregard it. The court also notes that the deadline for amending the complaint was April 1, 1999.

4

and Superintendent Richardson, persons directly responsible for making termination and hiring recommendations, that black students should be taught by black teachers.

**III.    Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an

5

"affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38.

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from

7

the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.  Discussion

If Ms. Bertholot is to prevail on her disparate treatment claim, she must submit proof of the Board's discriminatory motive, that is, some causal link between her race and the non-renewal of her employment contract. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  This causal link may be established by either: (1) presenting "direct evidence" of a discriminatory motive, or (2) establishing a discriminatory motive indirectly through the familiar procedure set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir. 1996) (providing that, in order to prove a disparate treatment claim, "'the plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent . . .'").  In support of her contention that race was the decisive factor in the non-renewal of her employment contract, Ms. Bertholot purports to offer both direct and circumstantial evidence of a discriminatory motive.  Since "[t]he analytical framework and burden of production varies depending on the method of proof chosen," *see Standard*, 161 F.3d at 1330, the court will address Ms. Bertholot's direct and circumstantial evidence arguments separately.

8

## A.   Direct Evidence

"Direct evidence" is defined as evidence, which if believed, "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard*, 161 F.3d at 1330 (citing *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989)); *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999).[4]  Therefore, stray remarks, statements by non-decision makers and statements by decision makers unrelated to the adverse employment decision do not constitute "direct evidence" of discrimination. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("[e]vidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence"). For this reason, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of . . . [race] will constitute direct evidence of discrimination." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990) (citations omitted); *see also Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000) ("[i]t is a rare case . . . where there exists actual direct evidence of discrimination"). Although rare, if a claimant can produce direct evidence that she suffered an adverse

---

[4]The court notes that, in *Wright v. Southland Corporation*, 187 F.3d 1287 (11th Cir. 1999), Judge Tjoflat rejects the traditional definition of direct evidence in favor of a "preponderance" definition, i.e., "evidence from which a reasonable factfinder could find, by a preponderance of evidence, a causal link between an adverse employment action and a protected personal characteristic." *Id.* at 1294. This less stringent definition, however, has since been rejected by two federal district courts as "'mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion.'" *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114 n. 11 (S.D. Ala 2000) (quoting *Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000). In fact, as pointed out by both *Ferrell* and *Copley*, the Eleventh Circuit has not applied Judge Tjoflat's "preponderance" definition of direct evidence in its most recent disparate treatment decisions. *See Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729-730 (11th Cir. 1999). This court too will decline to apply Judge Tjoflat's more liberal definition of "direct evidence" as set forth in *Wright, supra*.

employment action because of her race, "the ultimate issue of discrimination is proved." *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1993). In such a situation, the *McDonnell Douglas* analysis for circumstantial evidence cases is not applicable and the direct evidence, standing alone, is usually sufficient to defeat a motion for summary judgment. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998); *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998).

In the present matter, Ms. Bertholot's proffer of alleged "direct evidence" consists of: (1) a statement made by Jan Payne, the Board's communications director, that "race was the issue" in Ms. Bertholot's termination; (2) a statement made by Superintendent Nicholson at an instructional meeting that "[b]lack children need black teachers;" and (3) statements made by Principal Walker to Ms. Bertholot suggesting that her employment contract would not be renewed because "he did not want white teachers in his school system" and that "black students need black teachers." Of these statements, however, only the "blatant remarks" made Principal Walker could be considered "direct evidence" of a discriminatory motive. *See Earley*, 907 F.2d at 1081-82.

As pointed out by the board, the statements allegedly made by Jan Payne after Ms. Bertholot's contract was not renewed cannot constitute direct evidence of a discriminatory motive because the record is devoid of any evidence suggesting that Payne had any input or influenced the decision maker, i.e., the Board, with regard to the decision in question. *See Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997) ("'the biases of one who neither makes nor influences the challenged personnel decision are not probative in an

10

employment discrimination case'"). Likewise, although Superintendent Nicholson undoubtedly has an influence on the Board's employment decisions, the racially biased statement he allegedly made during an instructional meeting is not direct evidence of a discriminatory motive because the court would be required to draw a number of inferences in order to reach the conclusion that Nicholson relied upon Ms. Bertholot's race in making his recommendation to the Board.[5] *See, e.g., Beaver v. Rayonier Inc.*, 188 F.3d 1279, 1285-86 (11th Cir. 1999) (holding decision maker's comment that he wanted to attract "younger, engineer-type employees or supervisors" in reduction of workforce case did not rise to the level of "direct evidence" of discrimination). At most, Superintendent Nicholoson's comment is a "stray remark" unrelated to the decision making process and, as such, is insufficient to raise an issue of material fact. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Conner, J., concurring).

While Principle Walker's statement is undoubtedly the type of "blatant remark" described in *Earley*, 907 F.2d at 1081-82, such a statement cannot qualify as direct evidence of a discriminatory motive unless: (1) Walker, in some meaningful fashion, influenced the Board's decision, *see Holifield*, 115 F.3d at 1563-64, and (2) the statements can surmount the Board's hearsay objections. Although the record is void of any evidence suggesting intentional discrimination on the part of the Board, the ultimate "decision maker" in this matter, the Eleventh Circuit has held that the discriminatory animus harbored by those who make recommendations to the decision maker may be imputed to the decision maker if it

---

[5] However, as discussed in section B, *infra*, Superintendent Nicholson's alleged comment is probative (circumstantial) evidence of his state of mind at the time he made his recommendation of non-renewal to the Board.

simply "rubber stamped" those recommendations without conducting an independent investigation. *See Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998) (stating that "if the plaintiff shows the harasser employed the decision maker as her 'cat's paw'-- i.e., the decision maker acted in accordance with the harasser's decision without herself evaluating the employee's situation -- causation is established) (citation omitted). This application of agency principles in the context of Title VII actions is not a novel concept as the Board suggests; to the contrary, it has been recognized by other circuits. *See, e.g., Kramer v. Logan County School District No. R-1*, 157 F.3d 620 (8th Cir. 1998); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990).

In the present matter, Principle Walker, as Ms. Bertholot's direct supervisor, recommended to Superintendent Nicholson that Ms. Bertholot's contract with the Board not be renewed. Thereafter, apparently without following up on Walker's recommendation, Superintendent Nicholson made an identical recommendation to the Board. In turn, again without conducting an independent investigation, the Board subsequently followed Superintendent Nicholson's recommendations and chose not to renew Ms. Bertholot's employment contract for the 1997-1998 school year. Therefore, although Principle Walker is three steps removed from the actual employment decision, the Board cannot immunize itself from liability by blindly following the recommendations of its agents. For this reason, applying a "cat's paw" theory of liability, Principle Walker's discriminatory animus will be imputed to Superintendent Nicholson and, in turn, to the Board.

The board contends that, even if Principal Walker's statements constitute "direct evidence" of discrimination, all of those statements are hearsay and, as such, are

12

insufficient to defeat a motion for summary judgment. This hearsay argument with regard to the statement of Principal Walker is specious. First, since he is charged with making recommendations regarding the employment and/or termination of teachers at Jess Lanier, statements suggesting black students ought to be taught by black teachers certainly fall within the scope of his employment and are, by definition, not hearsay. *See* Fed. R. Evid. § 801(d)(2)(D); *see also Equal Employment Opportunity Comm'n v. Watergate and Landmark Condominium,* 24 F.3d 635 (4th Cir. 1994) (containing an instructive treatment of when an employee's statements regarding employment policies or procedures constitute agent admissions; such statements must concern matters within the scope of the declarant's agency which generally means that the agent must have some involvement in the decisional process, either in making recommendations to the decision makers or in implementing the policy). Moreover, the statement of Principal Walker is not offered for the truth of what he is claimed to have said. Instead, it is offered as evidence that he said it. The issue is not whether black students need black teachers but rather whether Principal Walker believes it, said it, and acted upon his belief. By definition, this cannot be hearsay. *See* Fed. R. Evid. § 801(c).

The testimony of Jo E. Alexander, however, presents a "double hearsay" problem. In other words, while Principle Walker's statements to Ms. Bertholot qualify as an admission, in order to gain admissibility, Ms. Bertholot's subsequent conversation with Ms. Alexander (relating Principle Walker's statements) must also surmount the Board's hearsay objection. In support of admissibility, Ms. Bertholot contends that her statements to Ms. Alexander qualify as a Rule 803(2) "excited utterance." Fed. R. Civ. P. § 803(2). The court

13

tends to agree with Ms. Bertholot.  Pursuant to Rule 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. *Id.*  In her deposition, Ms. Alexander, a fellow teacher, testified that Ms. Bertholot arrived at their scheduled meeting a few minutes late "crying and really upset."  (Pl. Ex. G, p. 131).  According to Ms. Alexander, Ms. Bertholot "had just been in the office with Don Walker, and he had told her that she was going to be fired basically because she was a white person, and he didn't think that white people were able to teach black children as well."  (Pl. Ex. G, p. 132).  Since Ms. Bertholot clearly remained under stress or excitement at the time she repeated Principle Walker's statements to Ms. Alexander, Ms. Bertholot's statements are sufficiently trustworthy to justify admission under Rule 803(2). *See Sowers v. Kerima, Inc.*, 701 F. Supp. 809, 916 (S.D. Ga. 1988) (plaintiff's statements to co-worker, relating harassing statements by supervisor immediately after she left supervisor's office in distraught condition, were admissible pursuant to Rule 803(1) and 803(2)).

In short, applying a "cat's paw" analysis, Ms. Bertholot has presented competent, "direct evidence" that her contract to teach English at Jess Lanier was not renewed because the individual responsible for making employment recommendations to the Superintendent of the Bessemer City School System was of the opinion that black children should be taught by black teachers. *See, e.g., Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir. 1990) (college president's statements that women would not be considered for the dean's position constituted "direct evidence" that the plaintiff's gender played a role in defendant's decision not to hire her); *Caban-Wheeler v.*

*Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990) (statement that the employer's program needed an African-American director constituted "direct evidence" of reverse discrimination); *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 779 (11th Cir. 1985) (plaintiff's testimony that decision maker told him, prior to filling assistant manager position, the company was looking for a younger person constituted "direct evidence" of age discrimination). Therefore, while the Board may be able to present convincing evidence that Ms. Bertholot was not a suitable person to teach at Jess Lanier or that the statements attributed to Principal Walker were not actually made by him, Ms. Bertholot has presented "direct evidence" of reverse discrimination, i.e., "evidence, which if believed, establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318 (*citing Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989).

For this reason, there exist genuine issues of material fact as to the reasons for the plaintiff's termination and the Board's motion for summary judgment is due to be denied.

**B.     The McDonnell Douglas Framework**

Even if this court were not satisfied that Ms. Bertholot had presented sufficient "direct evidence" of discrimination to avoid summary judgment on her "direct evidence" claim, the court is satisfied that she would be entitled to a trial on her circumstantial evidence under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) analysis.[6] As pointed

---

[6] The *McDonnel Douglas-Burdine* burden shifting analysis was not intended to be "rigid, mechanized, or ritualistic." *Green v. School Bd. of Hillsborough County, Florida*, 25 F.3d 974, 978 (11th Cir. 1994). Instead, it is meant to be a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Id.*

out by the court in *Wright v. Southland Corporation*, 187 F.3d at 1289,  the *McDonnell Douglas* framework was designed to help plaintiffs who lacked "direct evidence" of the employer's discriminatory intent to prove discrimination indirectly by inference.

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the initial burden of establishing a *prima facie* case of discrimination.  "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 792 (11th Cir. 1999) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  In order to establish a *prima facie* case, the plaintiff must introduce evidence of actions taken or decisions made by an employer "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978).  The burden of production then shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the allegedly discriminatory employment action. *Lathem*, 172 F.3d at 793.  "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir. 1991), *cert denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987).

Once the defendant presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Texas Dep't of Community Affairs v. Burdine*  450 U.S. 248, 255 n.10 (1981).  The plaintiff must then prove by a preponderance

of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Conclusory allegations of discrimination are insufficient; rather, the plaintiff must present concrete evidence of pretext in the form of clear and specific facts. *Earley*, 907 F.2d at 1083-84 (11th Cir. 1990). A plaintiff may establish pretext directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of belief. *Combs v. Plantation Planters*, 106 F.3d 1519, 1528 (11th Cir. 1997); *see also Bogle v. Orange County Bd. of County Comm'rs,* 162 F.3d 653, 658 (11th Cir. 1998)(declaring that the defendant was not entitled to judgment as a matter of law if plaintiff produced "any evidence that would allow a reasonable jury to disbelieve the proffered reasons for his discharge").

If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination and to preclude summary judgment. *Combs*, 106 F.3d at 1529. Because of the difficult factual questions involved in assessing an employer's "true motivations," once the plaintiff has presented evidence raising a question about those motivations, summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence," the final assessment of the employer's motivation must be left

17

to the jury. *Combs,* 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont De Nemours & Co.,* 100 F.3d 1061, 1072 (3rd Cir. 1996) (en banc)).

### 1.    The *Prima Facie* Case

The Board contends that Ms. Bertholot cannot establish a *prima facie* case of reverse discrimination.  To establish a prima facie case in this context, Ms. Bertholot must produce sufficient evidence to create a genuine issue of material fact on each of the following matters: (1) she belongs to a protected class; (2) she was qualified for her job; (3) she was rejected for the job; and (4) that the job was filled by a minority. *Wilson v. Bailey,* 934 F.2d 301 (11th Cir. 1991).

Conceding that three of the foregoing elements have been satisfied, the Board asserts that Ms. Bertholot cannot establish a *prima facie* case of reverse discrimination because she was not "qualified" to teach at Jess Lanier.  More specifically, the Board argues that Ms. Berholot was not qualified to teach because she was unable to control her students and failed to conduct herself in a professional manner.  (Def. Motion at p. 3).  For purposes of employment discrimination law, a person is "qualified" for a particular position if "[s]he meets the criteria that the employer has specified for the position."  *Wright* 187 F.3d at 1300 (citing *Thornley v. Penton Publ'g, Inc.,* 104 F.3d 26, 29 (2nd Cir. 1997)); *see also Thomas v. Eastman Kodak,* 183 F.3d 38, 56 (1st Cir. 1999) (providing that a person is "qualified" for a particular job if he or she meets her employer's legitimate performance obligations at the time of his or her discharge).  In the present case, the Board's criteria for "certified" personnel includes, among other factors: (1) whether the applicant has a college transcript, (2) whether the applicant has a passing score on the Alabama Competency

Teacher Examination, (3) the type of teaching certificate the applicant holds, and (4) the applicant's character, ability, past performance, etc. (Pl. Ex. P, p. 241-242). Viewing the evidence in a light most favorable to the plaintiff, the court finds that Ms. Bertholot, a certified teacher who currently holds both a Bachelor's and Master's degree in Education, and who received relatively high "evaluations" during her final year of employment, has presented sufficient evidence from which a jury could find that she was "qualified" to teach English classes at Jess Lanier. The Board's legitimate concerns as to Ms. Betholot's alleged inability to "relate" and "interact" with students, therefore, are more appropriately analyzed as part of the Board's response to Ms. Bertholot's *prima facie* case.

## 2.    **Legitimate Non-Discriminatory Reason**

Since Ms. Bertholot has produced sufficient evidence of a *prima facie* case of intentional race discrimination,  the Board must assume the burden of articulating one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).  This burden is "exceedingly light," *Perryman v. Johnson Products Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason." *Hill v. Seaboard Coastline R. Co.*, 767 F.2d 771 (11th Cir. 1985).  The Board contends that Ms. Bertholot's contract was not renewed "because she was unable to meet the demands of her job relative to classroom control and discipline of students." (Def. Motion at p. 4).  Specifically, the Board points to: (1) teacher evaluations performed by Michael Russell, the Principal of Jess Lanier during Ms. Bertholot's first two years of employment, indicating low ratings in classroom management; (2) documented instances

19

where Ms. Bertholot was observed "yelling" at her students; and (3) one instance where Ms. Bertholot was sitting in the floor "Indian style" allegedly in a "confused state of mind." Clearly, if believed, these explanations would be sufficient legitimate, non-discriminatory reasons for the Board's actions.

### 3.  Plaintiff's Proof of Pretext

Since the Board has proffered a legitimate non-discriminatory explanation for the action it took with respect to Ms. Bertholot, any inference of discrimination arising from her *prima facie* case is eliminated and Ms. Bertholot now has the ultimate burden of pointing to specific evidence sufficient to call into question whether the Board's articulated reasons are a mere pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256.  In an attempt to persuade the court that the Board's proffered reason for not renewing her contract is mere pretext, Ms. Bertholot presents both direct and indirect evidence. *See id.*  The direct evidence of the Board's alleged discriminatory motive, as more fully described above, consists of Principle Walker's statements to Ms. Bertholot that her contract would not be renewed because "he did not want white teachers in his school system" and that "black students need black teachers."  (Pl. Ex. A, p. 011).[7]

This direct evidence is buttressed by indirect or circumstantial evidence tending to show the Board's proffered explanation is not worthy of credence.  For instance, in response to the Board's contentions that Principle Russell's evaluation was a factor in the non-renewal of her contract, Ms. Bertholot cites Principle Walker's evaluation, performed

---

[7] Although direct evidence of discrimination is oftentimes utilized by plaintiffs within the *McDonnell Douglas* framework to prove pretext, plaintiffs can avoid the *McDonnell Douglas* burden shifting analysis completely by presenting the direct evidence up front. *See* Section IV, A, *supra*.

about four months before her termination, giving her the highest or next to the highest rating in virtually every listed category - including classroom management. Additionally, as pointed out by Ms. Bertholot, even if Principle Russell's evaluations were less than stellar, in contrast to Principle Walker, he twice recommended that her employment contract be renewed. Furthermore, only a few weeks after Principle Walker's statements, and mere weeks after Ms. Bertholot's discharge, the Board hired, upon the recommendation of Superintendent Nicholson (who in turn had received a recommendation from Principle Walker), a minority who was not certified to teach high school in the State of Alabama to fill Ms. Bertholot's vacancy. Hiring someone under such circumstances, Ms. Bertholot correctly contends, would not only contravene the Board's own hiring policy, but would also require a showing of a true emergency situation, i.e., that properly certified candidates were not available. Ala. Code § 16-23-3(e) (1975); (Pl. Ex. P, p. 241). There is, however, no evidence in the record of an "emergency" situation.

Finally, in addition to the circumstances surrounding Ms. Bertholot's termination and Ms. Morrow's employment, Ms. Bertholot offers a racially biased statement allegedly made by Superintendent Nicholson, i.e., "[b]lack teachers teach black children more effectively." While Nicholson's statement is not "direct evidence" of discrimination, it certainly provides strong circumstantial evidence of Nicholson's motivation, and therefore the Board's motivation, for terminating Ms. Bertholot.[8] In short, the direct and circumstantial evidence

---

[8] Similar to the statements made by Principle Walker, Superintendent Nicholson's statement that "black children need black teachers" concerns a matter within the scope of his agency (recommending teachers to the Board) and, as such, is excepted from hearsay under Rule 801(d)(2)(D). Fed. R. Evid. § 801(d)(2)(D). Alternatively, even if the statement does not concern a matter within the scope of Nicholson's agency and, therefore, not admissible for truth, the statement is nevertheless admissible as relevant to Nicholson's state of mind. Fed. R. Evid. § 801(c).

proffered by Ms. Bertholot, pointing out the weaknesses and inconsistencies in the Board's "legitimate" reasons for not renewing her employment contract, could lead a reasonable factfinder to conclude that those reasons are unworthy of credence. *See Combs*, 106 F.3d at 1538. For this reason, Ms. Bertholot has successfully established pretext on the part of the Board and, therefore, the Board's motion for summary judgment will be denied with respect to Ms. Bertholot's disparate treatment claim.

This is not to say, however, that Ms. Bertholot would ultimately prevail should her disparate treatment claim be decided by a jury. Indeed, the Board has presented strong evidence suggesting that Ms. Bertholot had difficulty controlling her students and that she demonstrated deficient classroom management skills. Moreover, both Principle Walker and Superintendent Nicholson deny making the racially biased statements attributed to them by Ms. Bertholot and Carolyn Hull, respectively. Nevertheless, despite the Board's contentions, a genuine issue of material fact exists as to the Board's reasons for not renewing Ms. Bertholot's employment contract and, therefore, the matter would be more appropriately decided by a jury.

## V.   **Conclusion**

Upon a thorough review of the parties' submissions, the court concludes that Ms. Bertholot has successfully presented "direct" and "circumstantial" evidence of the Board's discriminatory motive with respect to the non-renewal of her employment contract with the Bessemer City School System. Her "direct" evidence, consisting of "blatant remarks" allegedly made by Principle Walker, is sufficient, standing alone, to defeat the Board's motion for summary judgment. *See Carter*, 132 F.3d 635, 641 (11th Cir. 1998). However,

even if this "direct" evidence was not deemed sufficient to make a claim of intentional discrimination, Ms. Bertholot has carried her burden under the burden shifting framework set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Accordingly, the Board's motion for partial summary judgment is due to be denied as it relates to Ms. Bertholot's disparate treatment claim.

Since Ms. Bertholot has voluntarily consented to judgment on her retaliation claim, the Board's motion for partial summary judgment with respect to that claim is due to be granted.  On the court's own motion, the plaintiff's disparate impact claim will be dismissed as unsupported in the evidence and the law.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __26th__ of October, 2000.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE